IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **TANGIE D. SMITH** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:08-cv-242-UWC** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").

On review of the record, the Court finds the Administrative Law Judge's ("ALJ") decision, which has become the decision of the Commissioner, is deficient due to the ALJ's failure to develop the record. Accordingly, the case must be remanded.

### I. Procedural History

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on November 29, 2004. (R. 19.) This application was denied administratively at the

1

initial and reconsideration stages. Plaintiff requested a hearing before an ALJ, which was held on April 26, 2006, in Birmingham, Alabama. (R. 19.) On September 26, 2006, the ALJ denied the claim. (R. 29.) This denial became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review on December 1, 2007. (R. 4.)

Having timely pursued and exhausted her administrative remedies, Plaintiff filed an action for judicial review in this Court pursuant to section 1631 of the Social Security Act, 42 U.S.C. § 1383(c)(3).

## II.  Factual Background

At the time of the hearing, Plaintiff was 25 years old. Since she did not pass the high school exit exams, she was given a high school attendance certificate instead of a diploma. She has always lived with her mother. (R. 340, 341.)

Plaintiff had short stints of past relevant work experience as a cashier, grocery store worker, and fast food worker. (R. 341-2.) But she has never worked more than three months on a job. (R. 343, 344). While on a job, she would frequently call home to her mother, complaining that "they're getting on my nerves," and asking her mother to come and pick her up from the job. (R. 359.)

Plaintiff has not engaged in substantial gainful activity since on or about June 5, 2003.

The ALJ found that Plaintiff has the severe impairments of diabetes and a learning disability. (R. 21.) He found that her depression is not a severe impairment.(R. 27.)

## A. Cognitive Impairments

Plaintiff repeated the first grade. Her eighth grade records show she was a "good student," but had a low attention span and could be disruptive. (R. 148.) Her school records also indicated Plaintiff tended to daydream in class. (R. 136.) In 1993, when she was almost thirteen, a psychological examination was performed on Plaintiff by Dr. Leila G. Swanson, Ph.D. (R. 136-9.) During the test, Plaintiff became frustrated when test items grew in difficulty, responded very quickly to test questions and asked several times how much more she had to complete. Indeed, during the test, Plaintiff's concentration notably deceased and her distractibility increased. (R. 136.) Her language skills were moderately to severely disordered and her IQ test score was 84, thereby placing her cognitive functioning in the borderline range. (*See* R. 137.)

In high school, Plaintiff was enrolled in special education courses and some mainstreamed classes. (R. 126, 140.) In 1996, Plaintiff's ninth grade teacher, Ms. Simmons, completed a social maturity behavioral checklist where she indicated Plaintiff required coaxing and did not initiate work, and she was sometimes unable

3

to sit still. (R. 133.) Ms. Simmons also completed an observation form during a single physical science class. During that class, Ms. Simmons observed that Plaintiff mostly kept her head on her desk, sat up a few times to take notes, and did not respond when asked a question. (R. 146.)

Plaintiff earned a high school certificate of attendance after failing her exit examinations. (R. 341, 127.)

At the behest of SSA, psychologist Dr. Bob Wendorf performed a consultative psychological examination of Plaintiff in February 2005. (R. 198-99.Plaintiff's IQ scores were as follows: Verbal 70, performance 79, and full scale 72. However, he did not believe the scores were reliable because of Plaintiff's lack of motivation.[1] He concluded that she functioned in the borderline range and in some instances, low average range of intelligence.(R. 199.)  He did not evaluate Plaintiff's residual functional capacity ("RFC").

Dr. Wendorf noted that Plaintiff's performance might be indicative of attention deficit disorder ("ADD"). But instead of conducting further examination into the ADD issue, he simply ruled it out in reaching his diagnostic impression.

---

[1] Plaintiff arrived 25 minutes late. The IQ test had to be interrupted while food was provided to her. "She clearly was not paying attention and many test items had to be repeated for her. She seemed to be easily frustrated and prone to give up quickly." Dr. Wendorf found that Plaintiff was "barely cooperative, and [her approach to the IQ test was] at best lackadaisical". (R. 199.).

On May 26, 20006, Plaintiff underwent a psychological examination by Dr, Jerald K. Anderson, retained by her attorney. (R. 325-339. Dr. Anderson rated Plaintiff's cognitive functioning as borderline.[2] He made the following assessments:

> <u>Judgment and Insight.</u> [Plaintiff] likely does not have sufficient judgment to make acceptable work decisions and/or manage her own funds due to poor social judgment revealed in her work history and her low intellectual endowment. She appears to have only a limited capacity to cooperate effectively with others. Her insight into herself, her condition, and her treatment program is poor. ....
> .....
> <u>Motivation.</u> ..... [Plaintiff is likely experiencing moderate impairments in her ability to understand, carryout, and remember instructions, and marked impairments in her ability to respond appropriately to supervisors, coworkers, and work pressures in a work setting.

(R. 330, 331.)

## B. Residual Functional Capacity

Dr. Anderson evaluated Plaintiff's RFC. He found that she had marked restrictions in the following areas: 1) activities in daily living, 2) maintaining social functioning, 3) concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner, 3) ability to respond to customary work pressures, 4) ability to respond appropriately to supervisors in a work setting, and 4) ability to respond appropriately to co-workers in a work setting. (R. 332, 333.) These levels of

---

[2]On her cognitive function tests, she scored at a third grade level in reading and math, but at a fifth grade level in spelling.

severity would apply without consideration of substance abuse.

Dr. Anderson concluded that Plaintiff's prognosis for treatment over the upcoming twelve months was poor due to failure of previous treatments to demonstrably improve her conditions. (R. 331)

Dr. Anderson also noted that high blood sugar levels and anxiety may impact mental functioning. (R. 325.)

At the administrative hearing, Plaintiff testified that her glucose readings constantly fluctuate between low and high. After taking her diabetes medications, the readings become too low. (R. 348.). She has always had problems with her "nerves." (R. 351.)

According to Plaintiff's mother, Yvonne Smith, Plaintiff frequently experiences sudden changes in mood where everything "gets on her nerves." (R. 360.)

When Plaintiff was interviewed by one of the SSA's intake officers, she was "silly and genuinely unhelpful" in completing some of her forms. She had to be assisted by her mother. (R. 69.)

C. Physical Impairments

In May 2003, Plaintiff was admitted to the hospital complaining of generalized weakness, nausea and vomiting. (R. 159-67.) Her blood sugar was 661 and she was diagnosed with diabetes.

Nine months later, beginning in February 2004, her records begin to show regular visits during which she received medical care. Although, Plaintiff received diabetic education on numerous occasions, her records from February 2004 through March 2005 frequently show very high blood sugar readings. (*See, e.g.,* 178, 214-7, 221, 285, 288.) Additionally, her treatment records are replete with notations that she was non-compliant with her diet and, on at least one occasion, she was non-compliant with her medications. (R. 177, 180, 197, 210, 212-3, 218, 222, 224, 223, 263, 268, 271, 288, 298, 400.) With respect to her diet, she frequently consumed candy, non-diet soda and other carbohydrates. (R. 213, 221-2, 271.) The records do not, however, seem to indicate any continuing problem with regulating her medications.

Plaintiff was diagnosed with diabetic ketoacidosis in May 2003 and again in May 2006.[3] (R. 25, 299.)

---

[3] Diabetic ketoacidosis a life-threatening condition often caused by untreated diabetes.

In June 2005, during her psychological examination by Dr. Anderson, Plaintiff reported having trouble maintaining her diabetes diet. Indeed, while she had taken her medications, she reported she had not eaten the morning of the examination and that her blood sugar had measured over 400. Dr. Anderson, noted that a normal blood sugar reading for Plaintiff would have been between 70 and 100. (R. 325-6.)

Dr. Mark Downey performed a consultative physical examination. Although Plaintiff was very thin, he found no abnormalities and determined she could walk or stand at least six hours during an eight hour workday. (R. 200 - 04.) He did not undertake a RFC examination.

At the administrative hearing, Plaintiff testified that she was unable to work .because she was often fatigued due to uncontrolled diabetes. (R. 346-49, 360-61.) On her SSA forms, she indicated "[e]ach Doctor" she had spoken with told her that juvenile diabetes is "very tricky and uncontrollable." (R. 122.)

### III. The ALJ's Findings

After the administrative hearing, the ALJ found that Plaintiff suffers from the severe impairments of diabetes and a learning disability. He further found that these impairments do not meet or equal a listing. (R. 28-89.)

With respect to Plaintiff's diabetes, the ALJ found that there were no indications from any physician that Plaintiff's diabetes caused any limitations in her

ability to work. He dis not consider the combined effects of Plaintiff's severe impairments.

The ALJ gave no weight to the opinions of Dr. Anderson.

The ALJ found that Plaintiff's impairments did not limit her ability to perform her past unskilled jobs as a cashier and server. (R. 29.)

### IV.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for

determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 969 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). The first consideration is whether the claimant is working. If the claimant is working, she is not disabled. If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

The burden is on the claimant to show that she meets the criteria under the listing. To meet the listing, the claimant must be (1) diagnosed with a condition that is listed or its equivalent, and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and duration requirement. *See Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments. This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors. 20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981).

## V. Analysis

This Court must remand Commissioner's decision for several reasons.

First the ALJ failed to develop the record with respect to attention deficit disorder. As far back as eighth grade, Plaintiff's records show she had a low attention span and could be disruptive. (R. 148.) Her ninth grade teacher noted that Plaintiff required coaxing, did not initiate work, and she was sometimes unable to sit still. (R. 133.) Her school records also indicated Plaintiff tended to daydream in class. (R. 136.) A psychological evaluation indicated that Plaintiff became frustrated when test items grew in difficulty, responded very quickly to test questions and asked several times how much more she had to complete. Indeed, during the test, Plaintiff's concentration notably deceased and her distractibility increased. (R. 136.)

According to Plaintiff's mother, Yvonne Smith, Plaintiff frequently experiences sudden changes in mood where everything "gets on her nerves." (R. 360.) According to one of the SSA intake officers, Plaintiff was "silly and genuinely unhelpful" in completing some of her forms, thereby necessitating assistance from her mother. (R. 69.)

Also compelling was the report from the SSA's own consulting psychologist, Dr. Wendorf, who noted that Plaintiff's performance on the intelligence tests might be indicative of attention deficit; but he failed to test or to recommend testing on this very probative issue. (R. 199.)

For failure to develop the record, the decision must be remanded.

Second, the ALJ rejected the only medical evaluation of Plaintiff's RFC, and substituted his own judgment. At the very least, if Dr. Anderson's opinion was due to be rejected (and the Court finds that the reasons given for the rejection are invalid, in light of the evidence record as a whole), the ALJ had a duty to fully develop the record with an RFC by some other psychologist. His failure to do so requires a remand.

Separately, the decision must be remanded because the ALJ conspicuously failed to consider and make findings on the combined effects of Plaintiff's impairments.

## Conclusion

For the above reasons, by separate order, the decision denying benefits will be reversed and the case remanded to the Commissioner.

                                              _____
                                                           U.W. Clemon
                                              United States District Judge